UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DEONANDRE FORD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:24 CV 211 RWS |
| | ) |
| BILL STANGE, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

This case is before me on Petitioner Deonandre Ford's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Ford asserts two grounds for relief in his petition. Because his claims for relief lack merit and/or do not present a basis for federal habeas relief, I will deny Ford's petition.

## BACKGROUND

Deonandre Ford is an inmate at the Southeast Correctional Center in Charlestown, Missouri. On December 1, 2016, a jury convicted Ford on the following counts: (1) first-degree manslaughter; (2) armed criminal action; (3) first-degree assault; (4) armed criminal action; (5) first-degree assault; (6) armed criminal action; (7) unlawful use of a weapon; (8) armed criminal action; (9) unlawful use of a weapon; (10) armed criminal action; (11) first-degree endangering the welfare of a child; and (12) armed criminal action. On February 2, 2017, the trial court

sentenced Ford to fourteen years with consecutive life, second consecutive life, consecutive thirty years, and consecutive fifteen years' imprisonment.

The Missouri Court of Appeals affirmed Ford's conviction and sentences on March 27, 2018. On October 27, 2022, the trial court denied Ford's motion for post-conviction relief after an evidentiary hearing. On March 5, 2024, the Missouri Court of Appeals affirmed the denial of post-conviction relief. On November 15, 2024, Ford timely filed this petition for writ of habeas corpus.

The Missouri Court of Appeals described the factual background of Ford's criminal case as follows:

> Defendant was charged with fourteen felonies, including: one count of first-degree murder, one count of second-degree murder, two counts of first-degree assault, two counts of unlawful use of a weapon, one count of first-degree endangering the welfare of a child, and seven associated counts of armed criminal action. The charges related to a single incident in which Defendant, encouraged by his brother ("Co-Defendant"), fired a handgun into a crowd of over thirty people, including several children. The crowd was engaged in an altercation on the street in a residential neighborhood in front of the home of one of the victims. Without warning, Defendant popped up from behind a brick wall where he was hiding and fired his gun into the crowd until he ran out of bullets. Defendant was specifically aiming at one woman, who was shot in the hip and the foot. Two other individuals were seriously injured, one of whom died as a result of the injuries. The altercation started earlier in the day as an argument between Defendant and one of the victims over a pair of jeans Defendant accused her of refusing to pay him for.

ECF No. 19-5 at 2.

In his petition for writ of habeas corpus, Ford raises the following two grounds for relief:

2

(1) The trial court erred in admitting into evidence a pretrial statement he made to his codefendant because it was an involuntary statement; and

(2) He received ineffective assistance of counsel because counsel did not impeach one of the witnesses with a prior inconsistent statement.

Respondent asserts that these grounds are without merit and that the record supports the state court's determination.

## LEGAL STANDARD

Federal courts are authorized to issue habeas relief for state prisoners pursuant to 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). But this power is limited to "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Id.* Notwithstanding narrow exceptions, federal courts may not grant such applications if the applicant has not exhausted state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

For claims adjudicated on the merits in state court proceedings, federal courts may issue habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

3

An adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An adjudication is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* The standard requires an objectively unreasonable application of federal law; a merely incorrect application is not sufficient. *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Thus, to obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357–58.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

4

# DISCUSSION

### A. Ground One: The trial court did not err in admitting into evidence Ford's pretrial statement.

In Ground One of his petition, Ford claims the trial court erred in admitting into evidence a pretrial statement he made to his codefendant because it was an involuntary statement. The Missouri Court of Appeals rejected this claim on appeal as follows:

> At issue in this appeal is the admissibility of inculpatory statements made by Defendant to Co-Defendant following a custodial interrogation in which he was advised of and subsequently waived his Miranda rights. Defendant argues the fact that he did not know he would be recorded while the detective was not present rendered his statements involuntary because the waiver of his constitutional right to remain silent was not made knowingly. We disagree.
>
> Our review of a trial court's ruling on a motion to suppress evidence is limited to a determination of whether the decision is supported by substantial and competent evidence. *State v. Johnson*, 988 S.W.2d 115, 117-18 (Mo. App. W.D. 1999) (citing *State v. Owsley*, 959 S.W.2d 789, 794 (Mo. banc 1997)). We will reverse the ruling only if it was clearly erroneous. *State v. Humble*, 474 S.W.3d 210, 214 (Mo. App. W.D. 2015). We review the evidence in the light most favorable to the trial court's ruling, and we defer to the court's judgment concerning the weight of the evidence and the credibility of the witnesses. *Id.* "That the record includes evidence which would support a contrary conclusion is immaterial." *Johnson*, 988 S.W.2d at 118. "When, however, the issue to be decided involves the constitutional protection against forced self-incrimination, our review of the trial court's ruling is a two-part inquiry: we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law de novo." *State v. Sardeson*, 220 S.W.3d 458, 464-65 (Mo. App. S.D. 2007).

The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment, guarantees that "No person shall . . . be compelled in any criminal case to be a witness against himself[.]" The Missouri Constitution provides a similar guarantee, stating "no person shall be compelled to testify against himself in a criminal cause." MO. CONST., art. I, § 19; *see Johnson*, 988 S.W.2d at 118. In the context of "custodial interrogation" of a suspect, police officers are required to issue *Miranda* warnings advising the suspect of his or her basic constitutional rights. *Johnson*, 988 S.W.2d at 118 (citing *Miranda*, 384 U.S. at 445). *Miranda* warnings "are designed 'to insure that the right against compulsory self-incrimination [is] protected.'" *Johnson*, 988 S.W.2d at 118 (quoting *State v. Bittick*, 806 S.W.2d 652, 657 (Mo. banc 1991)). Police who are interrogating an individual are only required to give warnings concerning these basic constitutional rights "when the interrogation is 'in custody.'" *Id.* (quoting *Miranda*, 384 U.S. at 445).

Statements made by a defendant during a custodial interrogation are inadmissible against the defendant on the issue of that suspect's guilt of the charged offense unless the police first inform the defendant of his or her rights under the Fifth Amendment, and the defendant subsequently waives those rights. *State v. Schneider*, 483 S.W.3d 495, 501 (Mo. App. W.D. 2016) (citing *Miranda*, 384 U.S. at 444). "[T]he waiver must be knowing and intelligent, in that it was made with a full awareness of the nature of the *Miranda* rights being abandoned and the consequences of the decision to abandon those rights." *State v. Mendez-Ulloa*, 525 S.W.3d 585, 592 (Mo. App. E.D. 2017).

When a defendant challenges the admissibility of his own prior statement, arguing it was compelled in violation of the Fifth Amendment due to police coercion or was made without the benefit of warnings concerning his constitutional rights, the State must prove by a preponderance of the evidence that the statement was voluntary. *Johnson*, 988 S.W.2d at 118 (citing *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc 1991)). "The test for the 'voluntariness' of a statement is whether, under the circumstances, officers deprived a defendant of the choice of admitting, denying, or refusing to answer." *Johnson*, 988 S.W.2d at 118. "This includes whether officers used physical or psychological coercion to such a degree that they overcame a defendant's will." *Id.* "In making this voluntariness determination,

6

'[t]he fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative.'" *State v. Hughes*, 272 S.W.3d 246, 256 (Mo. App. W.D. 2008) (quoting *Oregon v. Elstad*, 470 U.S. 298, 318 (1985)).

Here, there was no violation of Defendant's rights under either the Fifth Amendment or Miranda. As the trial court correctly found, the detective properly advised Defendant of his *Miranda* rights, and Defendant's statements to Co-Defendant occurred after Defendant waived these rights by voluntarily and willingly agreeing to speak to the detectives. Defendant admitted at trial he spoke with the detective willingly. The record does not suggest, nor does Defendant argue, the detective "used physical or psychological coercion to such a degree that it overcame [Defendant]'s will," or "deprived [Defendant] of the choice of admitting, denying, or refusing to answer." *See Johnson*, 988 S.W.2d at 118. Therefore, Defendant's statements made after he was informed of his *Miranda* rights were voluntary, unless Defendant's decision to waive his constitutional rights was not knowingly and intelligently made.

We find the record supports that Defendant's waiver was knowingly and intelligently made because "it was made with a full awareness of the nature of the *Miranda* rights being abandoned and the consequences of the decision to abandon those rights." *Mendez-Ulloa*, 525 S.W.3d at 592. The detective properly advised Defendant of his *Miranda* rights both orally and in writing. Defendant stated he understood his rights and initialed each section of a written *Miranda* waiver form indicating he understood each of his rights. Defendant also admits he was aware the interview was being recorded while speaking with the detective. Nothing in this case supports a finding that Defendant's waiver of his *Miranda* rights was either unknowing or unintelligent. Therefore, the admission of Defendant's statements made after he was properly informed of and voluntarily waived his rights did not violate Defendant's rights pursuant to *Miranda*. *See Hughes*, 272 S.W.3d at 256 (the fact that a suspect chooses to speak after being informed of his Miranda rights is highly probative). The fact that Defendant did not know he was being recorded while the detective was not present does not alter our conclusion. *See Sardeson*, 220 S.W.3d at 470 (no *Miranda* violation where State admitted a confession by defendant to mother on a jailhouse phone following an interrogation where defendant was

7

advised of and waived *Miranda* rights by voluntarily speaking to police).

Additionally, the statements at issue in this case were not made during or as a result of any interrogation by the detective. *Miranda* only applies where an individual is subjected to "custodial interrogation." *State v. Wilson*, 169 S.W.3d 870, 877 (Mo. App. W.D. 2005). "In Missouri, 'custodial interrogation' is defined as questioning initiated by law enforcement officers after a person has been taken into custody. . . ." *Id.* (quoting *State v. Glass*, 136 S.W.3d 496, 511 (Mo. banc 2004)). "An 'interrogation' occurs when the police obtain a statement from a suspect by using 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Wilson*, 169 S.W.3d at 877 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Although it is undisputed that Defendant was in custody, nothing indicates Defendant was being subjected to police questioning or any other conduct that was "reasonably likely to elicit an incriminating response" at the time Defendant's statements to Co-Defendant were made. *See Wilson*, 169 S.W.3d at 877. The detective advised Defendant of his *Miranda* rights during the interview, interrogated Defendant by asking him questions, then ended the interrogation and left the room. Defendant only made the statements to Co-Defendant after the detective left the room, under the belief that the detective could not hear him. Because Defendant's statements to Co-Defendant were made to a third party, after the interrogation ended, and while no police officer was even in the room with Defendant, *Miranda* does not apply. *Sardeson*, 220 S.W.3d at 470 (*Miranda* does not apply when Defendant's statements are made to a third party and are "not in response to any express questioning or its functional equivalent").

We acknowledge that a custodial interrogation is "inherently coercive." *State v. Sparkling*, 363 S.W.3d 46, 49 (Mo. App. W.D. 2011) (citing *Miranda*, 384 U.S. at 436). However, Defendant was no longer being interrogated when he made the statements to Co-Defendant, and the coercive nature of simply being in custody was alleviated when the detective properly gave Defendant all required *Miranda* warnings prior to Defendant's statements to Co-Defendant. *See Johnson*, 988 S.W.2d

8

at 118 (*Miranda* warnings are designed to insure that the right against compulsory self-incrimination is protected). Because the Fifth Amendment only protects an individual from compelled self-incrimination, and nothing in the record demonstrates Defendant's statements to Co-Defendant were compelled by police conduct, the trial court did not err in admitting these statements as evidence against Defendant at trial.

Accordingly, we find the trial court did not clearly err in denying Defendant's motion to suppress his statements to Co-Defendant because the admission of these statements did not violate Defendant's rights under either *Miranda* or the Fifth Amendment. Point denied.

ECF No. 19-5 at 5–10.

Ford does not provide any factual grounds or analysis to overcome the previous decisions of the state courts. The state court's legal findings are not "so lacking in justification" that there is reason to set aside these determinations and subject the prior decision to review by this Court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Moreover, Ford does not provide any evidence that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law. Nor did Ford establish that the state courts' decisions were based on unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As a result, Ground One of Ford's habeas petition will be denied.

## B. Ground Two: Ford did not receive ineffective assistance of counsel.

In Ground Two of Ford's petition, he alleges that he received ineffective assistance of counsel. Ford provides no factual basis for this claim but argued in his

9

post-conviction appeal that he received ineffective assistance of counsel because his counsel did not impeach witness C.C. with a prior inconsistent statement. I will construe Ground Two as a reassertion of this claim, which the Missouri Court of Appeals rejected as follows:

> In his sole point on appeal, Movant claims the motion court clearly erred in denying his amended motion because his trial counsel was ineffective for failing to impeach C.C., one of the State's witnesses, with a prior inconsistent statement contained in an intradepartmental police memorandum. Movant alleges it is reasonably likely he would not have been convicted of the charged crimes if C.C. had been so impeached. We disagree.
>
> To receive post-conviction relief for a claim of ineffective assistance of counsel, a movant must prove that (1) counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would exercise in a similar situation, and (2) that counsel's failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on the performance prong, the movant must overcome a strong presumption that counsel's performance was reasonable and effective by showing specific acts or omissions that, under the circumstances, fell outside the wide range of effective assistance. *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). To satisfy the prejudice prong, the movant must show that there is a reasonable probability that, but for counsel's alleged errors, the outcome of trial would have been different. *Id.* at 601. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a movant fails to satisfy either the performance or prejudice prongs of the *Strickland* test, his or her claim fails, and it is not necessary to address the other prong. *Moore v. State*, 659 S.W.3d 635, 639 (Mo. App. E.D. 2023).
>
> "A decision made by counsel based on reasonable trial strategy is virtually unchallengeable; rarely will a strategic decision of counsel be declared so unsound as to constitute ineffective assistance of counsel." *Tucker v. State*, 468 S.W.3d 468, 473 (Mo. App. E.D. 2015). "Normally, the extent and manner of cross-examination, including the

10

impeachment of a witness, is a matter of trial strategy." *McGuire v. State*, 523 S.W.3d 556, 571 (Mo. App. E.D. 2017). "Therefore, to overcome the presumption that defense counsel exercised a reasonable trial strategy in deciding not to impeach a witness, a movant must demonstrate that the decision was not a matter of reasonable trial strategy and that the impeachment would have provided him with a defense or would have changed the outcome of the trial." *Id.* (internal quotation marks and citation omitted).

On July 20, 2014, Detective D.M. ("Detective") of the St. Louis Metropolitan Police Department responded to the scene of the shooting and interviewed C.C. before she was transported to Barnes-Jewish Hospital to receive treatment for multiple gunshot wounds. At that time, C.C. told Detective that "[s]he was not sure who it was that shot her," which Detective noted in a memorandum sent to his superior officer. At trial, however, C.C. identified Movant as the person who shot her. Movant argues that C.C.'s trial testimony identifying him as the shooter was in "direct contradiction" to the statement she provided Detective on the day of the shooting, and that trial counsel's failure to use the prior inconsistent statement to impeach C.C. was ineffective assistance.

The motion court did not clearly err in denying this claim. We first note that "many inconsistent statements are so insignificant as to be meaningless and others are so easily explainable as to not justify being presented at trial." *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997). We believe that is the case here. As trial counsel explained in his evidentiary hearing testimony, it is clear that C.C.'s statement to Detective reflects her initial reluctance to discuss with police the circumstances of the shooting, particularly since she had not yet been treated for multiple gunshot wounds and was requesting emergency medical services at the time she gave her statement. She later lost this reluctance—indeed, when police visited C.C. at the hospital later that very same day, she indicated that Movant was the person who shot her. "It is reasonable strategy for trial counsel not to present impeachment evidence that might be easily explained on rebuttal, thereby potentially resulting in trial counsel's loss of credibility before the jury." *King v. State*, 505 S.W.3d 419, 425 (Mo. App. E.D. 2016).

Moreover, "trial counsel may fairly determine that the use of certain impeachment evidence may cause his or her client more harm than

11

benefit." *McGuire*, 523 S.W.3d at 571 (internal quotation marks and citation omitted). Trial counsel testified that his trial strategy was to show "that [Movant] was not there" and was instead at the hospital for the birth of his child on the day of the shooting. Lingering on C.C.'s identification of Movant at the scene of the crime would not have aided Movant's alibi defense and may have even opened the door to potentially harmful rebuttal testimony. Cross-examining C.C. about her statement in the memorandum could have led to adverse evidence about why C.C. was reluctant to talk to police. Specifically, C.C. might have explained that she was reluctant to identify Movant as the shooter because she feared him and the "group" to which he belonged—a group the jury could have then believed was in fact a gang. Viewing the record as a whole, we cannot say that the motion court clearly erred in determining that trial counsel's decision not to cross-examine C.C. regarding her prior statement was reasonable trial strategy.

Finally, even if trial counsel had attacked C.C.'s credibility with the statement from Detective's memorandum, Movant has failed to show that doing so would have changed the outcome of his trial. The trial record contains overwhelming evidence, besides C.C.'s testimony, sufficient to convict Movant of the charged crimes. For example, the State presented the testimony of A.N., who provided an extensive and detailed account of the crime and also identified Movant as the man who shot C.C. Thus, there is no reasonable likelihood that the result of Movant's trial would have been different but for trial counsel's alleged failure to impeach C.C. Because Movant has failed to show prejudice, the motion court did not clearly err in denying his claim of ineffective assistance. Movant's point is denied.

ECF No. 19-10 at 2–5.

Ford's ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment. First, the petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel

12

was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  Second, the petitioner must "show that the deficient performance prejudiced the defense." *Id.*  To demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance."  *Id.* at 690.  "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  This means that Greer must do more than "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance."  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned up). "Rather, he must show that the [Missouri Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699 (cleaned up).

The decision by Missouri Court of Appeals is not an unreasonable application of *Strickland*.  That court concluded that Ford's counsel's decision not to cross-examine C.C. was reasonable trial strategy because it could have opened the door to

13

harmful rebuttal testimony or resulted in counsel's loss of credibility before the jury. And after reviewing the record, the court further concluded that no prejudice resulted because the trial record contained overwhelming evidence sufficient to convict Ford. As a result, Ground Two of Ford's habeas petition will be denied.

## CONCLUSION

I will deny Ford's petition for writ of habeas corpus because his claims lack merit and/or do not present a basis for federal habeas relief. I will also decline to issue a certificate of appealability because Ford has not made a substantial showing of the denial of a federal constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Deonandre Ford for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_/s/ Rodney W. Sippel_
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of August 2025.